******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STEPHEN RICCIO *v.* COMMISSIONER OF CORRECTION
### (AC 47312)

Cradle, C. J., and Alvord and Clark, Js.

*Syllabus*

The petitioner, who had previously been convicted of, inter alia, violation of a protective order, appealed, on the granting of certification, from the habeas court's judgment dismissing his petition for a writ of habeas corpus. He claimed that the court erred by dismissing his petition for lack of subject matter jurisdiction on the ground that he was not in custody while on conditional discharge pursuant to the statute (§ 52-466) governing applications for writs of habeas corpus. *Held*:

The habeas court improperly determined that it lacked jurisdiction over the petition for a writ of habeas corpus, as the petitioner was in custody while on conditional discharge within the meaning of § 52-466, regardless of the conditions of discharge, because such an individual is subject to incarceration without the procedural safeguards enjoyed by members of the public, and that exposure, in itself, constitutes a severe restraint on an individual's liberty.

Argued March 18—officially released September 30, 2025

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, granted the respondent's motion to dismiss and rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Nicole Britt*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *John P. Doyle*, state's attorney, and *Angela Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, C. J. In this certified appeal, the petitioner, Stephen Riccio, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petitioner claims that the court erred by dismissing his petition for lack of subject matter jurisdiction on the ground that he was not in custody pursuant to General Statutes § 52-466[1] while on conditional discharge. We agree and, accordingly, reverse the judgment of the habeas court.

The following procedural history is relevant to our discussion of the petitioner's claim on appeal. On April 10, 2014, the petitioner pleaded guilty, under the *Alford* doctrine,[2] to violation of a protective order in violation of General Statutes § 53a-223, assault in the third degree in violation of General Statutes § 53a-61 and interfering with an officer in violation of General Statutes § 53a-167a. On that same day, he was sentenced to a total effective sentence of five years of incarceration, execution suspended after one year, and three years of conditional discharge. The petitioner was discharged from incarceration on that day in consideration of time that he already had served. His period of conditional discharge therefore began on that day, April 10, 2014, and ended on April 10, 2017.[3] The conditions of the petitioner's conditional discharge were "no new crimes, no

---

[1] General Statutes § 52-466 provides in relevant part: "(a) (1) An application for a writ of habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty. . . ."

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] General Statutes § 53a-31 (a) provides in relevant part: "A period of probation or conditional discharge commences on the day it is imposed, unless the defendant is imprisoned, in which case it commences on the day the defendant is released from such imprisonment. . . ."

Although § 53a-31 (a) has been amended by the legislature since the petitioner's conditional discharge in 2014; see Public Acts 2015, No. 15-211,

threats, [no] violence, [and no] unwanted contact [with the victim].''

On April 5, 2017, the petitioner filed a petition for a writ of habeas corpus alleging that his right to due process had been violated in that his guilty plea was not made knowingly, intelligently and voluntarily, and that his trial counsel rendered ineffective assistance.

On September 28, 2022, the respondent, the Commissioner of Correction, filed a motion to dismiss the petition, pursuant to Practice Book § 23-29 (1),[4] for lack of subject matter jurisdiction on the ground that the petitioner was not in custody within the meaning of § 52-466 at the time he filed his petition because he was on conditional discharge. The petitioner filed an objection to the respondent's motion, and an accompanying memorandum of law, arguing that he was in custody while on conditional discharge because he was still serving his sentence. He further argued he was in custody because the conditions of his discharge constituted a restraint on his liberty.

On August 4, 2023, the court, *Newson, J.*, held an evidentiary hearing on the respondent's motion and the petitioner's objection, at which the respondent introduced the testimony of two individuals: Thomas Canny, a deputy director of the Judicial Branch's Court Support Services Division with a focus on probation matters, who testified that the Office of Adult Probation has no oversight of an individual who is on conditional discharge; and Michelle Deveau, who testified that the Department of Correction had no supervision over the petitioner while he was on conditional discharge.

§ 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] Practice Book § 23-29 provides in relevant part: ''The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction . . . .''

On November 8, 2023, the court issued a memorandum of decision wherein it dismissed the petition for lack of subject matter jurisdiction on the ground that the petitioner was not in custody when he filed it. The court reasoned: "In the present case, the conditional discharge the petitioner was under required him to refrain from committing 'new crimes' or engaging in 'threats, violence or *unwanted* contact' with the victim. It would appear without need of citation . . . that no individual has a 'liberty interest' in committing crimes or in engaging in threatening, violent or unwanted contact with another person. . . . As such, the conditions of the discharge the petitioner was under at the time he filed this habeas petition did not impose any 'restraints on [his] liberty . . . not shared by the public generally' because the general public does not have the right to commit crimes or to threaten another person's safety and security. . . . Said another way, the terms of his conditional discharge only prohibited him from doing things he could not lawfully do in the first place. . . . Nothing about the conditions of his discharge required him to be at any place, to affirmatively perform any particular acts, such as community service, or to refrain from doing something, or from going to some place, that he otherwise had a right to. . . . Although he faced a [four] year suspended sentence attached to the conditional discharge, the petitioner could only suffer that penalty by engaging in conduct that was inherently illegal. . . . Therefore, that suspended sentence was more akin to a collateral consequence or a sentence enhancement than a direct restraint on the petitioner's liberty. Therefore, under the circumstances of this particular case, the petitioner was not 'in custody' within the meaning of . . . § 52-466 because the conditional discharge did not restrict him from doing 'those things which in this country free [people] are entitled to do.' . . . It must be reiterated that this decision is not

*because* the petitioner was on a conditional discharge, but because of the nature of the conditions that were imposed." (Citations omitted; emphasis in original; footnote omitted.) The court thereafter granted the petitioner's petition for certification to appeal, and this appeal followed.

On appeal, the petitioner asserts that an individual is in custody within the meaning of § 52-466 simply by virtue of his status of being on conditional discharge, regardless of the conditions imposed, because that status constitutes a severe restraint on his liberty for purposes of that statute. The respondent rejects such a wholesale approach and argues, consistent with the habeas court's reasoning, that the determination of whether an individual is in custody within the meaning of § 52-466 while on conditional discharge depends on the nature of the conditions imposed by the court. The respondent concedes that "[t]here may, in fact, be situations in which the particular conditions set by the court during a conditional discharge restrain a person to a sufficient degree, and in a manner not shared by the public generally, that he may be deemed in custody for purposes of establishing habeas jurisdiction," but argues that this is not such a situation. For the reasons that follow, we agree with the petitioner.

We begin our analysis with the relevant legal principles regarding a habeas court's jurisdiction and the applicable standard of review. Our Supreme Court has noted that "the history and purpose of the writ of habeas corpus establish that the habeas court lacks the power to act on a habeas petition absent the petitioner's allegedly unlawful custody." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 537, 911 A. 2d 712 (2006); see also *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 526, 876 A.2d 1178 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). In order

to satisfy the custody requirement of § 52-466, the petitioner must "be in custody on the conviction under attack at the time the habeas petition is filed . . . ." *McCarthy v. Commissioner of Correction*, 274 Conn. 557, 562, 877 A.2d 758 (2005). "[W]hether the petitioner is in custody for purposes of a habeas petition implicates the habeas court's subject matter jurisdiction." (Internal quotation marks omitted.) *Coleman* v. *Commissioner of Correction*, 231 Conn. App. 223, 230, 333 A.3d 113, cert. denied, 351 Conn. 927, 333 A.3d 1109 (2025). "A determination regarding a habeas court's subject matter jurisdiction is a question of law over which we exercise plenary review." Id.

"It is well established that, in determining the scope of the writ of habeas corpus under state law, we look to the scope of the writ under federal law." *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 529 n.17 ("the legislature did not intend to make the state writ of habeas corpus broader than its federal counterpart"). "The history of Connecticut's habeas corpus jurisprudence is wholly in accord with federal habeas corpus jurisprudence." (Internal quotation marks omitted.) *Ford* v. *Commissioner of Correction*, 59 Conn. App. 823, 826, 758 A.2d 853 (2000).

Under the federal habeas statutes, like our state habeas statute, courts can only review petitions of those who are in custody. See 28 U.S.C. §§ 2241 (c), 2254 (a) and 2255 (a) (2018). "Although the custody requirement has been construed liberally . . . it has never been extended to the situation where a habeas petitioner suffers no present restraint from a conviction." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 538. Historically, "in custody" meant physical restraint or imprisonment, but in *Jones* v. *Cunningham*, 371 U.S. 236, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963), the United States Supreme Court broadened the concept

to include circumstances in which the petitioner is not physically confined. In *Jones*, the court held that an individual on parole in Virginia is in custody for purposes of invoking habeas jurisdiction. Id., 243. The court began by noting that "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Id., 240. The court then recounted that as a result of his being on parole, the petitioner was "confined . . . to a particular community, house, and job at the sufferance of his parole officer." Id., 242. The court explained: "[The] [p]etitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States [c]onstitution. He can be rearrested at any time the [parole] [b]oard or parole officer believes he has violated a term or condition of his parole . . . and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime." (Footnote omitted.) Id. The court held that all of these requirements demonstrated that the petitioner was in custody even though he was not physically confined. Id., 243. The court reasoned that "what matters is that [the conditions imposed] significantly restrain [the] petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the [writ of habeas corpus]."[5] Id.

[5] The court noted that "[e]ven the condition which requires [the] petitioner not to violate any penal laws or ordinances, at first blush innocuous, is a significant restraint because it is the [p]arole [b]oard members or the parole officer who will determine whether such a violation has occurred." *Jones* v. *Cunningham*, supra, 371 U.S. 242 n.19.

Consistent with the principles espoused in *Jones*, it is well established in federal[6] and Connecticut jurisprudence that individuals who are on probation or parole satisfy the custody requirement necessary to invoke the jurisdiction of the habeas court. Quoting the United States Supreme Court's decision in *Morrissey* v. *Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), our Supreme Court explained: "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. . . . Probation is simply one point

---

[6] See *Lawrence* v. *48th District Court*, 560 F.3d 475, 480–81 (6th Cir. 2009) (petitioner was in custody where court could revoke probation and incarcerate petitioner if he violated terms of his probation or community service); *Earley* v. *Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be custody" (internal quotation marks omitted)), cert. denied sub nom. *Burhlre* v. *Earley*, 551 U.S. 1159, 127 S. Ct. 3014, 168 L. Ed. 2d 752 (2007); *Chaker* v. *Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005) ("a petitioner is in custody for the purposes of habeas jurisdiction while he remains on probation" (internal quotation marks omitted)), cert. denied, 547 U.S. 1128, 126 S. Ct. 2023, 164 L. Ed. 2d 780 (2006); *Jackson* v. *Coalter*, 337 F.3d 74, 78–79 (1st Cir. 2003) (petitioner was in custody while on probation); *Peck* v. *United States*, 73 F.3d 1220, 1224 n.5 (2d Cir. 1995) ("a term of supervised release, which carries with it the possibility of revocation and additional jail time, satisfies the 'in custody' requirement"), judgment vacated on other grounds on rehearing, 106 F.3d 450 (2d Cir. 1997); *Scanio* v. *United States*, 37 F.3d 858, 860 (2d Cir. 1994) (holding that, upon expiration of period of supervised release, habeas petitioner was no longer in custody); *McVeigh* v. *Smith*, 872 F.2d 725, 727 (6th Cir. 1989) ("individuals on parole, probation, or bail may be in custody for purposes of [28 U.S.C. §] . . . 2254"); *United States* v. *Spawr Optical Research, Inc.*, 864 F.2d 1467, 1470 (9th Cir. 1988) ("[a] probationary term is sufficient custody to confer jurisdiction"), cert. denied, 493 U.S. 809, 110 S. Ct. 51, 107 L. Ed. 2d 20 (1989); *Yoder* v. *Celebrezze*, Docket No. 87-4094, 1988 WL 93102, *1 (6th Cir. September 8, 1988) (unpublished opinion) (because probationary period ended prior to filing of habeas corpus petition, there was no jurisdiction), cert. denied, 490 U.S. 1089, 109 S. Ct. 2428, 104 L. Ed. 2d 985 (1989); *Sammons* v. *Rodgers*, 785 F.2d 1343, 1345 (5th Cir. 1986) ("[a] suspended sentence which has not yet run does establish jurisdiction in the federal court of the state where the sentence continues to exist"); *United States* v. *Hopkins*, 517 F.2d 420, 423 (3d Cir. 1975) ("imposition of a suspended sentence which carried with it the threat of incarceration for failure to comply with certain conditions was sufficient to establish federal habeas corpus jurisdiction").

(or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service. A number of different options lie between those extremes . . . . To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." (Internal quotation marks omitted.) *State* v. *Smith*, 207 Conn. 152, 165, 540 A.2d 679 (1988); see also *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004) ("[p]robation is, first and foremost, a penal alternative to incarceration" (internal quotation marks omitted)); *Guerra* v. *State*, 150 Conn. App. 68, 76, 89 A.3d 1028 (petitioner was no longer in custody when sentence expired upon completion of probation), cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014); *Koslik* v. *Commissioner of Correction*, 127 Conn. App. 801, 803 n.2, 16 A.3d 753 ("[a]t the time the petition was filed, the petitioner was serving the probationary portion of his sentence, which fulfilled the jurisdictional requirement of . . . § 52-466 that a habeas petitioner be in custody"), appeal dismissed, 301 Conn. 937, 23 A.3d 731 (2011).

Like probation and parole, a conditional discharge is a type of sentence imposing certain conditions. A defendant serving such a sentence remains exposed to the entire unexecuted portion of his sentence until the term of the sentence expires. Although a sentence of conditional discharge is less restrictive than a sentence of probation or parole and does not involve monitoring or direct supervision by the state, it enables the Office of the State's Attorney to seek a violation if it determines that a defendant has violated a condition of his or her release into the community. Moreover, an individual on

conditional discharge, like an individual on probation, may be incarcerated for the unexecuted portion of his suspended sentence upon a finding of a violation of his conditional discharge in a civil proceeding that lacks the procedural and constitutional safeguards afforded to members of the public facing criminal charges.

While the issue of whether an individual is in custody while on probation or parole is well settled, the case law pertaining specifically to conditional discharge, by contrast, is sparse. In *Nowakowski* v. *New York*, 835 F.3d 210 (2d Cir. 2016), the United States Court of Appeals for the Second Circuit addressed whether a petitioner who was serving a sentence of one year conditional discharge was in custody within the meaning of the federal habeas statute. Id., 213. In that case, the petitioner had been convicted after a court trial of harassment in the second degree, a violation under New York law. Id., 214. Although the petitioner was ordered to pay a fine, the fine was later vacated and he received a sentence of a one year conditional discharge requiring him to complete one day of community service within the year, which he completed following the filing of his petition for habeas relief. Id. The District Court dismissed his petition as moot reasoning that his conditional discharge had expired and he could no longer demonstrate a continuing collateral consequence. Id., 215.

On appeal to the Second Circuit, the court first addressed whether the petitioner was "in custody pursuant to the judgment of a [s]tate court at the time the petition [was] filed." (Internal quotation marks omitted.) Id., 215. In considering that issue, the Second Circuit noted that "courts have considered even restraints on liberty that might appear short in duration or less burdensome than probation or supervised release severe enough because they required petitioners to

appear in certain places at certain times, thus pre-
venting them from exercising the free movement and
autonomy available to the unrestricted public, *or
exposed them to future adverse consequences on discre-
tion of the supervising court.*" (Emphasis added.)
Id., 216.[7]

The court ultimately held that the petitioner was in
custody while on conditional discharge because the
restrictions of his release were not shared by the public
generally in that they required the petitioner's "physical
presence at particular times and locations, both for
community service and court appearances . . . *and
carr*[*ied*] *with them the potential for future adverse*

---

[7] In so holding, the court in *Nowakowski* cited the decision of the United
States Court of Appeals for the Fifth Circuit in *Sammons* v. *Rodgers*, 785
F.2d 1343 (5th Cir. 1986). See *Nowakowski* v. *New York*, supra, 835 F.3d
216. In *Sammons*, the petitioner was convicted of state crimes in Tennessee
and received a suspended sentence of five to fifteen years. *Sammons* v.
*Rodgers*, supra, 1345. He subsequently was convicted of unrelated federal
crimes and incarcerated for those crimes at a federal prison in Texas. Id.,
1344–45. The petitioner filed a habeas petition attacking his Tennessee
convictions, alleging that those convictions were adversely impacting his
eligibility for parole for the federal offenses. Id., 1344. That petition was filed
in a federal district court in Texas, where the petitioner was incarcerated,
and was denied on the ground that the court lacked jurisdiction to address
a challenge to the Tennessee convictions. Id., 1345. On appeal, the Fifth
Circuit reversed the district court's denial of the petition, concluding that,
because the petitioner alleged that his prior convictions affected his ability
to obtain parole in Texas, where he was then imprisoned, the Texas court
had jurisdiction over his habeas petition. Id. In dicta, the Fifth Circuit noted
that a federal district court in Tennessee also would have jurisdiction to
evaluate the constitutionality of his Tennessee convictions. Id. The court
explained: "[The petitioner] was sentenced to a term of five to fifteen years
and the sentence was suspended. Nothing in the record indicates that the
suspended sentence in this case does not carry with it possible revocation
of suspension or other adverse action. Because the suspended sentence
apparently has not expired, the federal district court in Tennessee would
have jurisdiction to evaluate the constitutionality of the convictions and
sentence. . . . A suspended sentence which has not yet run does establish
jurisdiction in the federal court of the state where the sentence continues
to exist." (Citation omitted.) Id.

*consequences during the term of the sentence, includ-ing arrest for noncompliance and modification or revocation of the conditional discharge . . . . They [were] wholly unlike the economic penalties suffered in fine-only or license-revocation sentences, where the punishments implicate only property, not liberty.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 217. Thus, the court in *Nowakowski*, while focusing in part on the conditions to which the petitioner was subject, also appeared to consider the possibility of revocation or modification of the release upon violation of the condi-tions to be a factor in determining whether the petition-er's conditional discharge was a restraint on his liberty.

The Second Circuit was faced with the same inquiry in *Vega* v. *Schneiderman*, 861 F.3d 72 (2d Cir. 2017), in which the petitioner was sentenced to one year of conditional discharge on the condition that she not violate a two year order of protection. Id., 73. The court held: "Although [the petitioner] faced the possibility of some new charge and future sanction if she were to violate the order of protection, we are not convinced that the entirely speculative possibility of a future charge for a future violation is sufficiently severe to place [the petitioner] 'in custody' for purposes of the habeas statute." Id., 75. In so holding, however, the court noted that "the order of protection did not expose [the petitioner] to future adverse consequences at the discretion of a supervising court as did the order in *Nowakowski*." Id. In other words, because the peti-tioner was on conditional discharge for one year and the order of protection was imposed for two years, she was no longer subject, once she satisfactorily served her conditional discharge, to adverse consequences associated with the sentence that she was serving on conditional discharge. The one year period of protec-tion that extended beyond the conditional discharge thus was a collateral consequence of the petitioner's

conviction and did not render her in custody for the purpose of seeking habeas relief.[8]

Although the question of whether an individual on conditional discharge is in custody for purposes of invoking the jurisdiction of the habeas court has not been squarely addressed in Connecticut,[9] we see no meaningful distinction between conditional discharge and probation in determining whether one is in custody and, therefore, has standing to bring a petition for a writ of habeas corpus. As this court has explained, probation and conditional discharge are "addressed in tandem . . . throughout the relevant statutes." *Cole-*

[8] In *United States* v. *Rutigliano*, 887 F.3d 98 (2d Cir. 2018), the Second Circuit noted: "[A] sentence of conditional discharge may or may not so severely restrain liberty as to equate to custody depending on whether it requires a defendant's 'physical presence at particular times and locations, both for community service and court appearances,' *Nowakowski* v. *New York*, [supra, 835 F.3d 217] (holding defendant in custody in such circumstances), or only his refrainment from certain conduct, such as contact with a specified person, see *Vega* v. *Schneiderman*, [supra, 861 F.3d 75] (holding that conditional discharge requiring defendant to abide by order of protection did not equate to custody under [28 U.S.C.] § 2254)." *United States* v. *Rutigliano*, supra, 106. Although this suggests that the court viewed the crucial distinction between *Nowakowski* and *Vega* as being whether the individual was required to engage in specific acts at specific times or locations, this view was clearly dicta in that the issue in *Rutigliano* was whether restitution orders were custodial. Id., 100–101. Moreover, it overlooks the fact that the Second Circuit in *Vega* distinguished the petitioner's situation from the petitioner's situation in *Nowakowski* on the other grounds discussed herein.

[9] In *Coleman* v. *Commissioner of Correction*, supra, 231 Conn. App. 240, this court presumed that a petitioner is in custody when on conditional discharge when it was faced with the question of when the petitioner was released from imprisonment and when his period of conditional discharge commenced for purposes of determining the date his period of conditional discharge expired. The court held that "the habeas court properly interpreted the phrase 'such imprisonment' in [General Statutes] § 53a-31 (a) in determining that the petitioner's conditional discharge commenced by operation of law on November 10, 2016, when he completed the incarceration portions of his state sentences. As a result, in November, 2019, the petitioner had completed his period of conditional discharge and thus was not in custody on the New Haven conviction when he filed the underlying habeas petition in December, 2019. Therefore, the court properly dismissed the habeas petition for lack of subject matter jurisdiction." Id., 244–45.

*man* v. *Commissioner of Correction*, supra, 231 Conn. App. 235.[10] Indeed, like probation,[11] conditional dis-

[10] General Statutes § 53a-28 (b) sets forth the authorized sentences that a court may impose, which include "[a] term of imprisonment; or . . . a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge . . . ."

General Statutes § 53a-29 (b) provides that "[t]he court may impose a sentence of conditional discharge for an offense . . . if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; and (2) probation supervision is not appropriate." Section 53a-29 (c) establishes that "[w]hen the court imposes a sentence of conditional discharge, the defendant shall be released with respect to the conviction for which the sentence is imposed but shall be subject, during the period of such conditional discharge, to such conditions as the court may determine."

General Statutes § 53a-30 (a) sets forth various conditions that a court may order a defendant to comply with when imposing a sentence of probation or conditional discharge. Section 53a-30 (c) provides in relevant part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. . . ."

General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . .

"(d) If [a] violation is established . . . the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[11] Similarly, "[p]arole is defined as [t]he conditional release of a prisoner from imprisonment before the full sentence has been served. . . . Parole does not destroy the judgment against the prisoner or remit his or her guilt. Neither does parole diminish a judicially imposed sentence or in any way

charge is one point on a continuum of possible punishments that a court may impose.[12] When an individual is released on probation or on conditional discharge, he is, unlike a member of the general public, serving a sentence for a crime of which he has been convicted.[13] Like a person on parole, a person on probation or conditional discharge "remains subject to the sentence of commitment for the period of time specified by the court."[14] (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 181, 55 A.3d 588 (2012), cert. granted, 307 Conn. 947, 60 A.3d 960 (2013) (appeal withdrawn May 28, 2013). The conditional release "alters only the method and degree of confinement during the period of commitment." (Internal quotation marks omitted.) Id. In other words, the liberty enjoyed by a petitioner on conditional discharge is, unlike the liberty enjoyed by members of

_____

affect it. A person on parole remains subject to the sentence of commitment for the period of time specified by the court. Parole alters only the method and degree of confinement during the period of commitment." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 180–81, 55 A.3d 588 (2012), cert. granted, 307 Conn. 947, 60 A. 3d 960 (2013) (appeal withdrawn May 28, 2013). "[P]arole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. . . . In most cases, the [s]tate is willing to extend parole only because it is able to condition it upon compliance with certain requirements." (Internal quotation marks omitted.) *State* v. *Jacques*, 332 Conn. 271, 303–304, 210 A.3d 533 (2019).

[12] Thus, contrary to the habeas court's conclusion in this case, the petitioner's suspended sentence is not akin to a collateral consequence or a sentence enhancement. It is a sentence of a term of imprisonment. See General Statutes § 53a-28 (b).

[13] In contrast, unconditional discharge is when a defendant is "released with respect to the conviction for which the sentence is imposed without imprisonment, probation supervision or conditions." General Statutes § 53a-34 (b). Such a sentence "is for all purposes a final judgment of conviction." General Statutes § 53a-34 (b).

[14] "A split sentence is a term of imprisonment with the execution of such sentence of imprisonment suspended, either entirely or partially, followed by a period of probation or conditional discharge." *State* v. *Abramovich*, 229 Conn. App. 213, 218 n.6, 326 A.3d 593 (2024).

the public generally, conditional. See *State* v. *Smith*, supra, 207 Conn. 165.

This court has noted that "[t]he most salient difference between the alternative dispositions is that a defendant who is serving a period of conditional discharge is subject to no supervision; whereas a defendant who is serving a period of probation is subject to supervision by the Office of Adult Probation." *Coleman* v. *Commissioner of Correction*, supra, 231 Conn. App. 234 n.7. Although a defendant who is on conditional discharge is not subject to supervision by the Office of Adult Probation, we agree with the reasoning of the United States Court of Appeals for the Second Circuit in *United States* v. *Ramirez*, 421 F.3d 159, 164 (2d Cir. 2005), that, although conditional discharge "does not require 'active supervision,' it has a 'supervisory component' insofar as the sentencing court can revoke or modify the sentence if the defendant violates a condition."[15] This reasoning is consistent with the United States Court of Appeals for the Sixth Circuit's holding in *Lawrence* v. *48th District Court*, 560 F.3d 475 (6th Cir. 2009), in which the court explained: "That the court imposed non-reporting probation is a distinction without a difference, as both give a court supervisory authority over a petitioner which allows it to revoke probation and incarcerate the petitioner should he violate the probation's terms."[16] Id., 480 n.5.

---

[15] A sentence of conditional discharge in New York is similar to conditional discharge in Connecticut. In New York, "[t]he court may modify or enlarge the conditions or, if the defendant commits an additional offense or violates a condition, revoke the sentence at any time prior to the expiration or termination of the period of conditional discharge. . . ." N.Y. Penal Law § 65.05 (2) (McKinney 2009).

[16] In *Meister* v. *New York State Attorney General*, Docket No. 06-CV-090A, 2007 WL 2874363 (W.D.N.Y. September 26, 2007), the United States District Court for the Western District of New York also addressed this issue. In that case, the court ultimately determined that it did not need to decide the question of whether the petitioner serving a sentence of conditional discharge was in custody because the habeas petition had been rendered moot by the expiration of the sentence. Id., *3. The court nevertheless noted: "The Second Circuit has explained that while [N.Y. Penal Law] § 65.05 does

Moreover, not only is an individual who is serving a sentence of conditional discharge "exposed . . . to future adverse consequences on discretion of the supervising court"; *Nowakowski* v. *New York*, supra, 835 F.3d 216; but when a condition of supervised release is violated, an individual on conditional discharge, like an individual on probation, is subject to incarceration without the procedural safeguards afforded to members of the public. "[A] [probation or conditional discharge] revocation proceeding . . . is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 183. At a revocation proceeding, the state must prove each alleged violation of probation only by a preponderance of the evidence, rather than beyond a reasonable doubt; see, e.g., *State* v. *Esquilin*, 179 Conn. App. 461, 470–71, 179 A.3d 238

not require active supervision, it has a supervisory component insofar as the sentencing court can revoke or modify the sentence if the defendant violates a condition. *United States* v. *Ramirez*, [supra, 421 F.3d 164] (discussing [N.Y. Penal Law] § 65.05 in the context of determining whether § 4A1.1 (d) of the Federal Sentencing Guidelines includes a sentence of conditional discharge under N.Y. Penal Law § 65.05) (citing *United States* v. *Labella-Szuba*, 92 F.3d 136, 138 (2d Cir. 1996) ([a]lthough defendant's sentence did not include active supervision, her sentence did include a supervisory component in that the Herkimer Village Court retained the power to revoke her conditional discharge sentence; finding that a sentence of conditional discharge was a criminal justice sentence); *United States* v. *Miller*, 56 F.3d 719, 722 (6th Cir. 1995); *United States* v. *Lloyd*, 43 F.3d 1183, 1188 (8th Cir. 1994) (holding the nature of a sentence of conditional discharge to be the functional equivalent of unsupervised probation); *United States* v. *Caputo*, 978 F.2d 972, 977 (7th Cir. 1992) (stating that unsupervised probation equals conditional discharge)." (Internal quotation marks omitted.) *Meister* v. *New York State Attorney General*, supra, 2007 WL 2874363, *2. On that basis, the court expressed that, because "the Second Circuit has held that a sentence of conditional discharge is the functional equivalent of unsupervised probation, and that there was a possibility of imprisonment . . . the [c]ourt would be inclined to conclude that [the petitioner] has satisfied the in custody requirement because it appears that the state exercises continuing supervision over him and he therefore was subject to restraints not shared by the public generally . . . ." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., *3.

(2018); and the rules of evidence do not apply to such proceedings. See Conn. Code Evid. § 1-1 (d) (4). This court has explained that "[t]he evidentiary standard for probation violation proceedings is broad. . . . [T]he court may . . . consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing. . . . The court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were dismissed." (Internal quotation marks omitted.) *State* v. *Randy G.*, 195 Conn. App. 467, 474–75, 225 A.3d 702, cert. denied, 335 Conn. 911, 229 A.3d 472 (2020). Thus, an individual on probation or conditional discharge is subject to incarceration without the procedural safeguards enjoyed by members of the public, and that exposure, in itself, constitutes a severe restraint on an individual's liberty. We therefore conclude that an individual on conditional discharge is in custody within the meaning of § 52-466 regardless of the conditions of discharge.

On the basis of the foregoing, we conclude that the petitioner was in custody within the meaning of § 52-466 and thus that the habeas court improperly determined that it lacked jurisdiction over the petitioner's petition for a writ of habeas corpus.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.